**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

Dagmar Jesus Diaz-Gonzalez,

      Petitioner

v.

John Mattos, et al.,

      Respondents

Case No.: 2:25-cv-02622-JAD-BNW

**Order Granting in Part Motion for Temporary Restraining Order and Prohibiting Petitioner's Removal to a Third Country**

[ECF No. 17]

Petitioner Dagmar Jesus Diaz-Gonzalez, a citizen of Cuba, was arrested by Immigration and Customs Enforcement (ICE) officials on November 14, 2025, was ordered removed on December 15, 2025, and remains detained at the Nevada Southern Detention Center (NSDC) in Pahrump, Nevada.[1]  In early February, Diaz-Gonzalez moved for a temporary restraining order contending that NSDC was not providing adequate medical treatment for his severe medical conditions and challenging ICE's intention to remove him to a third country not listed on his removal order.[2]  The court held a hearing on that motion and, after supplemental briefing, denied the TRO motion to the extent that it challenged NSDC's medical care because the prison showed that it was providing treatment for Diaz-Gonzalez's conditions.  But I ordered the parties to file status reports detailing his medical treatment to ensure that he continues to receive care.  In his most recent status report, Diaz-Gonzalez asks that the court order another report in 30 days to continue monitoring NSDC's care.  NSDC opposes that request.

I also ordered supplemental briefing on Diaz-Gonzalez's third-country-removal allegations.  ICE now acknowledges that it has given Diaz-Gonzalez notice that it intends to

---

[1] ECF No. 9 at 2.

[2] ECF No. 17.

remove him to Mexico, a country that he has no ties to. ICE argues that the notice it provided satisfies its due-process obligation to provide notice and an opportunity to be heard on its intention to remove him to a third country. Diaz-Gonzalez responds that the notice, combined with ICE's constitutionally inadequate third-country-removal policy, does not satisfy due process. I conclude that Diaz-Gonzalez has shown a likelihood of success on the merits of his third-country-removal claim, so I convert Diaz-Gonzalez's motion to one for a preliminary injunction, and I grant it. The respondents are prohibited from removing Diaz-Gonzalez to Mexico (or any other country not listed on his removal order) pending the resolution of his petition.

**Discussion**

**A.      Diaz-Gonzalez is entitled to a preliminary injunction on his third-party-removal claim.**

A temporary restraining order or preliminary injunction is an "extraordinary" remedy "never awarded as of right."[3] The Supreme Court clarified in *Winter v. Natural Resources Defense Council, Inc.* that, to obtain an injunction, plaintiffs "must establish that [they are] likely to succeed on the merits, that [they are] likely to suffer irreparable injury in the absence of preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in the public interest."[4] The Ninth Circuit recognizes an additional standard: if "plaintiff[s] can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships

---

[3] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).

[4] *Id.* at 20.

tips *sharply* in the plaintiffs' favor,' and the other two *Winter* factors are satisfied."[5]  Under either approach, the starting point is a merits analysis.

The respondents were given notice of Diaz-Gonzalez's TRO motion, as well as an opportunity to respond and to be heard at an in-person hearing.  I thus sua sponte convert the motion into one for a preliminary injunction.[6]  The standard for both forms of relief is the same, the parties were given notice and a hearing, and the nature of the relief granted by this case is more properly addressed by a preliminary injunction.

### 1.    *Diaz-Gonzalez is likely to prevail on his claim that respondents' third-country-removal procedures violate his due-process rights.*

#### a.    *The respondents' policy provides notice of third-country removal on a truncated timeline and allows screening for fear-based claims if the detainee affirmatively raises them.*

Once it has been determined that a noncitizen is to be removed from the United States, 8 U.S.C. § 1231(b) governs where he will be removed to.  The first choice is a country "to which the [noncitizen] wants to be removed."[7]  If deportation to that country isn't possible, the immigration judge has a list of other options, including the country from which the noncitizen entered the United States, the noncitizen's last country of residence, the country in which the noncitizen was born, and others.[8]  If all of those enumerated country options are "impracticable, inadvisable, or impossible," the noncitizen may be removed to "another country whose

---

[5] *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)).

[6] *See* Fed. R. Civ. P. 65 (distinguishing between a temporary restraining order and a preliminary injunction based on notice and the responding party's ability to be heard).

[7] 8 U.S.C. § 1231(b)(2)(A).

[8] 8 U.S.C. § 1231(b)(2)(E)(i–vi).

3

government will accept" him.[9]  Removal to a country not listed on a noncitizen's removal order is commonly referred to as a third-country removal.

There is one statutory restriction on third-party removal: "the Attorney General may not remove [a noncitizen] to a country if the Attorney General decides that the [noncitizen's] life or freedom would be threatened in that country because of the [noncitizen's] race, religion, nationality, membership in a particular social group, or political opinion."[10]  And the United Nations Convention Against Torture (CAT), ratified by the United States through the Foreign Affairs Reform and Restructuring Act, entitles noncitizens to seek asylum or withholding of removal to a country where they are likely to be persecuted or tortured.  Normally, a noncitizen raises CAT protections at or directly following his initial removal proceedings.  It appears that no immigration statute or regulation addresses how a noncitizen may raise CAT challenges after the ICE determines that removal to the country on his removal order is impracticable and instead chooses a third country to deport him to.

In early 2025, ICE tried to fill that statutory gap.  It issued a policy explaining that, as long as "the United States has received diplomatic assurances from the country of removal that [noncitizens] removed from the United States will not be persecuted or tortured" and those assurances are deemed "credible" by the Department of State, ICE need not give any notice or opportunity to be heard to noncitizens who are being removed to that country.[11]  In all other cases, ICE must serve a notice of removal on the noncitizen that informs him of the intended country of removal.[12]  ICE "will generally wait at least 24 hours following service of the notice

---

[9] 8 U.S.C. § 1231(b)(2)(E)(vii).

[10] 8 U.S.C. § 1231(b)(3)(A).

[11] ECF No. 39-1.

[12] *Id.*

of removal before effectuating removal," but the policy allows removal on a mere six hours' notice "as long as the [noncitizen] is provided reasonable means and opportunity to speak with an attorney prior to removal."[13]

After the notice of removal is served, the ICE officer "will <u>not</u> affirmatively ask whether the [noncitizen] is afraid of being removed" to that country, but if the noncitizen independently and "affirmatively state[s]" a fear of removal, ICE's Enforcement and Removal Operations (ERO) division "will refer the case to U.S. Citizenship and Immigration Services (USCIS) for a screening for eligibility for protection" under CAT.[14]  If, through an unidentified process, USCIS determines that the noncitizen has not shown that he "would more likely than not be persecuted on a statutorily protected ground or tortured in the country of removal," the noncitizen will be removed.[15]  If USCIS determines that the noncitizen "has met this standard," ICE will file a motion to reopen immigration proceedings for the "sole purpose of determining eligibility for protection under" 8 U.S.C. § 1231(b)(3) and CAT for the country of removal.[16]

> **b.    *The third-country-removal policy is unlikely to satisfy the Fifth Amendment's due-process guarantee.***

Diaz-Gonzalez contends that ICE's third-country policy does not provide adequate notice or an opportunity to be heard in violation of the Fifth Amendment's due-process clause.  "The Due Process clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent."[17]  The "fundamental

---

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (cleaned up).

features of due process" are notice and an opportunity to be heard.[18]  District courts in this circuit have held that to satisfy due process in the third-country-removal context, ICE must (1) provide notice, (2) "ask the noncitizen whether he or she fears persecution or harm upon removal to the designated country and memorialize in writing the citizen's response," (3) "inform the noncitizen that he or she may seek asylum, withholding, and relief under the CAT by filing a motion to reopen with the immigration courts" if the answer to that question is yes, and (4) provide "adequate time to prepare and file a motion to reopen[.]"[19]  Said more succinctly, "[a] noncitizen must be given sufficient notice of a country of deportation that, given his capacities and circumstances, he would have a reasonable opportunity to raise and pursue his claim for withholding of deportation."[20]  Courts across the country have also routinely found that ICE's third-country policy doesn't comport with due process.[21]

The respondents assert that Diaz-Gonzalez was given notice in December 2025 that he would be removed to Mexico.[22]  They argue that notice is sufficient to satisfy due process and that Diaz-Gonzalez has had plenty of time to seek relief if he fears removal.  But providing notice of the country of removal is only one step in the notice-and-opportunity-to-be-heard due-process guarantee.  The notice did not inform Diaz-Gonzalez that he was entitled to apply for asylum or withholding of removal if he fears prosecution or harm in Mexico.  And ICE's third-

---

[18] *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1205 (9th Cir. 2022).

[19] *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1019–20 (W.D. Wash. 2019); *see also, e.g.*, *Nguyen v. Scott*, 796 F. Supp. 3d 703, 727 (W.D. Wash. 2025).

[20] *Aden*, 409 F. Supp. 3d at 1009 (citing *Mathews v. Eldridge*, 424 U.S. 319, 348–49 (1976); *Kossov v. INS*, 132 F.3d 405, 408 (7th Cir. 1998)).

[21] *See, e.g.*, *Nguyen*, 796 F. Supp. 3d at 728; *Vu v. Noem*, 2025 WL 3114341, at *9 (E.D. Cal. Nov. 6, 2025); *D.V.D. v. DHS*, 2025 WL 1142968 (D. Mass. Feb. 25, 2026).

[22] *See* ECF No. 33.

country-removal policy instructs officers to refrain from asking if a noncitizen does have that fear, placing the onus on the noncitizen—who is often unrepresented and doesn't speak fluent English—to affirmatively state a fear and seek relief that he may not know exists. That process appears at odds with what due process requires. So I find that Diaz-Gonzalez is likely to succeed on the merits of his third-country-removal claim.

### 2.  *Diaz-Gonzalez satisfies the remaining Winter factors.*

I also conclude that the remaining *Winter* factors weigh in Diaz-Gonzalez's favor. He has established that he is likely to suffer irreparable harm from removal to a country where he has no familial ties, while suffering from severe medical and mental conditions, without first having a meaningful opportunity to challenge his removal to that country.[23] Diaz-Gonzalez has also shown that the harm he faces sharply outweighs the government's minimal hardship in complying with the due-process clause. The government's interest in enforcing immigration laws does not tip the scales for the government, especially when the petitioner has shown that his removal to a third country under ICE's current policy is likely unlawful.[24] So I grant Diaz-Gonzalez's motion and prohibit his removal to a third country.

---

[23] *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ("It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

[24] *See Galvez v. Jaddou*, 52 F.4th 821, 832 (9th Cir. 2022) (recognizing that "neither equity nor the public's interest are furthered by allowing violations of federal law to continue").

**B.      The parties are not required to file further status reports regarding Diaz-Gonzalez's medical care.**

On March 24, 2026, NSDC and Diaz-Gonzalez filed status reports to inform the court of Diaz-Gonzalez's treatment for his medical conditions while detained.[25]  Both parties agree that Diaz-Gonzalez has received adequate medical care thus far, but Diaz-Gonzalez asks that the court order another status report in thirty days to provide an update on his care and confirm that a scheduled neurology appointment has occurred.[26]  NSDC opposes that request, noting that Diaz-Gonzalez "acknowledges . . . that he is being provided with constitutionally adequate medical care" and has withdrawn his request for a temporary restraining order related to his care.[27]

Given the robust evidence that NSDC has provided Diaz-Gonzalez with adequate medical treatment, I find that further status reports are not warranted at this time.  Diaz-Gonzalez does not supply any information from which to infer that NSDC will stop meeting its constitutional obligation to provide care.  So I deny Diaz-Gonzalez's request for a renewed status report.

**Conclusion**

IT IS THEREFORE ORDERED that petitioner Dagmar Jesus Diaz-Gonzalez's motion for a temporary restraining order **[ECF No. 17]** is converted to a motion for a preliminary injunction and **is GRANTED in part.  The respondents are prohibited from removing Diaz-Gonzalez to a country not listed on his removal order pending resolution of the habeas petition.**

---

[25] ECF Nos. 44, 45.

[26] ECF No. 44 at 3.

[27] ECF No. 45 at 3–4.

IT IS FURTHER ORDERED that the parties are not obligated to provide further updates to this court on the status of Diaz-Gonzalez's medical care.

_____
U.S. District Judge Jennifer A. Dorsey
March 27, 2026

9