**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

|  |  |
|---|---|
| Dagmar Jesus Diaz-Gonzalez,<br><br>    Petitioner<br><br>v.<br><br>John Mattos, et al.,<br><br>    Respondents | Case No.: 2:25-cv-02622-JAD-BNW<br><br>**Order Granting Second Amended Habeas Petition and Closing Case**<br><br>[ECF No. 48] |

Petitioner Dagmar Jesus Diaz-Gonzalez, a citizen of Cuba, was arrested by Immigration and Customs Enforcement (ICE) officials on November 14, 2025, ordered removed on December 15, 2025, and remains detained at the Nevada Southern Detention Center (NSDC) in Pahrump, Nevada. In late December, Diaz-Gonzalez filed a pro se petition for a writ of habeas corpus seeking his release from custody on the grounds that his severe medical conditions warranted relief. The court appointed counsel, who filed a first amended habeas petition and a motion for a temporary restraining order seeking Diaz-Gonzalez's immediate release. After a hearing and supplemental briefing, Diaz-Gonzalez withdrew his requests for relief related to the medical care he's received at NSDC and instead argued that ICE's intent to remove him to a third country violated his due-process rights. I granted his TRO motion on that ground, finding that Diaz-Gonzalez's removal to a country not listed on his removal order would violate his due-process rights.

Following entry of the TRO, Diaz-Gonzalez filed a second amended petition raising his third-country-removal arguments and adding a claim for unconstitutionally prolonged detention under *Zadvydas v. Davis*.[1] He contends that the government cannot show that his removal is

---

[1] *Zadvydas v. Davis*, 533 U.S. 678 (2001).

reasonably foreseeable and that the procedures to remove him to a third country are unconstitutional. I grant his petition on those grounds and order his release, subject to reasonable supervision conditions.

**Background**

Dagmar Jesus Diaz-Gonzalez is a citizen of Cuba who came to the United States in 2002 as a refugee.[2] He was convicted of attempted sexual assault in 2016 and served his state-court sentence in Nevada.[3] ICE immediately took him into federal custody upon his release from state custody on November 15, 2025.[4] He was ordered removed to Spain or Cuba on December 15, 2026.[5] Diaz-Gonzalez waived his appeal of that order, but he then filed an appeal anyway. The Board of Immigration Appeals (BIA) dismissed that appeal on March 16, 2026.

Diaz-Gonzalez filed a habeas petition seeking release from custody on December 29, 2025.[6] I appointed counsel and, on January 23, 2026, Diaz-Gonzalez filed a counseled amended petition, contending that he suffers from traumatic brain injuries and multiple sclerosis—both of which require significant medical care to treat.[7] He argued that he was receiving inadequate medical care at NSDC and thus that his civil detention amounted to unconstitutional punishment. He also contended that his continued detention violated ICE's own policies concerning the detention of chronically ill or disabled persons and policies concerning discretionary parole. Finally, Diaz-Gonzalez challenged ICE's third-country-removal policy, contending that ICE's

---

[2] ECF No. 21-2 at 3.
[3] ECF No. 21-1 at 2.
[4] ECF No. 21-2 at 3.
[5] ECF No. 21-4 at 1.
[6] ECF No. 1.
[7] ECF No. 9 at 5–6.

2

intent to remove him to Mexico without proper notice and an opportunity to be heard violated his due-process rights.  A couple of weeks later, Diaz-Gonzalez moved for a temporary restraining order directing his immediate release on the grounds raised in his petition.[8]

I held a hearing on Diaz-Gonzalez's TRO motion on February 17, 2026.[9]  A representative from NSDC explained the steps that were being taken to ensure that Diaz-Gonzalez received proper medical treatment.  The parties then filed several status reports updating the court about the improvements to Diaz-Gonzalez's care.[10]  I also ordered supplemental briefing on Diaz-Gonzalez's third-country-removal arguments.[11]

In March 2026, I converted Diaz-Gonzalez's TRO motion into one for a preliminary injunction and granted it in part.[12]  I found that Diaz-Gonzalez was likely to prevail on his third-country-removal arguments because he wasn't given proper notice or an opportunity to contest his removal to a country not listed on his removal order.[13]  And because the parties agreed that Diaz-Gonzalez was then receiving proper medical care, I denied further relief related to his medical-treatment claims.[14]

On April 15, 2026, Diaz-Gonzalez filed a second-amended petition.[15]  The petition still lists claims for inadequate medical care, but Diaz-Gonzalez acknowledges that he previously "withdrew th[ose] ground[s] for relief and [that] his request for this court's intervention" is

---

[8] ECF No. 17.

[9] ECF No. 30 (minutes of hearing).

[10] ECF Nos. 31, 32, 33, 45.

[11] ECF Nos. 35, 42.

[12] ECF No. 46.

[13] *Id.* at 5–7.

[14] *Id.* at 8.

[15] ECF No. 48.

"based on respondents' corrective action."[16]  He maintains his third-country-removal claims and adds a claim for unconstitutionally prolonged detention under *Zadvydas*.[17]

**Discussion**

**A.      This court has jurisdiction over Diaz-Gonzalez's claims.**

The constitution makes a writ of habeas corpus "available to every individual detained in the United States."[18]  That writ permits a person who is in custody to challenge the legality of his detention, and the court has the authority to release the petitioner if it determines that he is illegally detained.  The court's habeas jurisdiction encompasses a noncitizen's challenge to his detention under United States immigration laws.[19]

**B.      Diaz-Gonzalez has shown that he is entitled to relief on his prolonged-detention claim.**

*1.      The government has authority to detain noncitizens after they have been ordered removed.*

The Immigration and Nationality Act (INA) and its implementing regulations establish a complex set of rules governing the government's authority to arrest, detain, order removed, and deport noncitizens.  8 U.S.C. § 1231(a) governs the detention of noncitizens who have been ordered removed.  It establishes a 90-day "removal period" that begins on "(i) the date the order of removal becomes administratively final, (ii) if the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order," or (iii) the date the noncitizen is released from non-immigration detention.[20]  During that 90-day period,

---

[16] *Id.* at 13.

[17] *Id.* at 14–22.

[18] *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art 1, § 9, cl. 2).

[19] *Zadvydas*, 533 U.S. at 687; *Demore v. Kim*, 538 U.S. 510, 517 (2003).

[20] 8 U.S.C. § 1231(a)(1)(B).

detention is mandatory.[21]  The statute gives the government the ability to detain a noncitizen beyond that 90-day removal period under § 1231(a)(6) if he is inadmissible, removable "as a result of violations of status requirements or entry conditions, violations of criminal law, or reasons of security or foreign policy"[22] or has been determined "to be a risk to the community or unlikely to comply with the order of removal."[23]  If those conditions aren't met, the government may release the noncitizen "subject to certain terms of supervision."[24]

### 2.      *The Supreme Court has limited the government's statutory authority to indefinitely detain noncitizens awaiting removal.*

Section 1231(a)(6) contains no limit on the length of time that a noncitizen may be held after his removal order becomes final.  But in *Zadvydas v. Davis*, the United States Supreme Court rejected the government's contention that noncitizens can be held indefinitely under § 1231(a)(6) because that interpretation "would raise a serious constitutional problem" under the Fifth Amendment's due-process clause.[25]  To avoid those constitutional concerns, the High Court interpreted the statute to permit continued detention only if a noncitizen's removal is "reasonably foreseeable."[26]  It determined that six months of post-removal-period detention is presumptively reasonable.[27]  But after six months, the noncitizen must "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future" to show that

---

[21] 8 U.S.C. § 1231(a)(2)(A).

[22] *Zadvydas*, 533 U.S. at 682.

[23] 8 U.S.C. § 1231(a)(6).

[24] *Zadvydas*, 533 U.S. at 682 (quoting 8 U.S.C. § 1231(a)(6)) (cleaned up).

[25] *Id.* at 690.

[26] *Id.* at 699.

[27] *Id.* at 701.

his prolonged detention exceeds the government's statutory authority and that he should be released from ICE custody.[28]  If the noncitizen meets that burden, "the government must respond with evidence sufficient to rebut that showing."[29]  And as "the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink."[30]

> **3.      *Diaz-Gonzalez has shown good reasons to believe that he will not be removed in the reasonably foreseeable future, and the government has not rebutted that showing with any evidence of likely removal.***

Diaz-Gonzalez has now been detained for six months following entry of his removal order.[31]  So Diaz-Gonzalez bears the initial burden of showing that there are "good reason[s] to believe that there is no significant likelihood of removal in the reasonably foreseeable future."[32]  To meet that burden, Diaz-Gonzalez contends that Cuba has declined to accept him twice—once in December 2025 and again in January 2026.[33]  He also points to the respondents' own admission that removal to Spain is not "presently practicable."[34]  And Diaz-Gonzalez argues that respondents' attempt to remove him to Mexico will also fail because "Mexico is only taking non-Mexicans that wish to go to Mexico voluntarily," and he does not.[35]  I find that Diaz-Gonzalez's

---

[28] *Id.*

[29] *Id.*

[30] *Id.* (cleaned up).

[31] The parties agree that Diaz-Gonzalez's removal order became final because he waived his right to appeal, even though he technically appealed to the BIA.  *See* ECF No. 48 at 18; ECF No. 50 at 5.  So I treat December 15, 2026, as the date upon which Diaz-Gonzalez's removal order became final.

[32] *Zadvydas*, 533 U.S. at 701.

[33] ECF No. 48 at 20.

[34] *See* ECF No. 39 at 3.

[35] ECF No. 48 at 21 (citing recent cases pointing to a policy of Mexico accepting only willing deportees).

allegations are sufficient to establish good reason to believe that he is not likely to be removed in the reasonably foreseeable future.

The government does not meet its shifted evidentiary burden to show that Diaz-Gonzalez's removal is foreseeable. It filed its response in late April and relied solely on the fact that, at that time, less than six months had passed since he was issued his final removal order to contend that *Zadvydas* doesn't warrant relief.[36] But six months have now passed, Diaz-Gonzalez is still detained, and the government has not filed any updates to suggest that his removal has become more foreseeable in the months since it filed its response. Because the government doesn't present evidence to show that Diaz-Gonzalez's removal to Cuba or any other country is significantly likely in the reasonably foreseeable future, I grant his petition on this claim and order his release.[37]

**C.      Diaz-Gonzalez has shown that the government's third-country-removal procedures violate due process.**

> *1.      The government's policy provides notice of third-country removal on a truncated timeline and allows screening for fear-based claims if the detainee affirmatively raises them.*

Once it has been determined that a noncitizen is to be removed from the United States, 8 U.S.C. § 1231(b) governs where he will be removed to. The first choice is a country "to which the [noncitizen] wants to be removed."[38] If deportation to that country isn't possible, the immigration judge has a list of other options, including the country from which the noncitizen

---

[36] ECF No. 50.

[37] Because resolution of this claim gives Diaz-Gonzalez the primary relief he seeks, I do not address whether his medical-treatment claims were properly revived in his second amended petition or whether they have merit.

[38] 8 U.S.C. § 1231(b)(2)(A).

entered the United States, the noncitizen's last country of residence, the country in which the noncitizen was born, and others.[39]  If all of those enumerated country options are "impracticable, inadvisable, or impossible," the noncitizen may be removed to "another country whose government will accept" him.[40]  Removal to a country not listed on a noncitizen's removal order is commonly referred to as a third-country removal.

There is one statutory restriction on third-party removal: "the Attorney General may not remove [a noncitizen] to a country if the Attorney General decides that the [noncitizen's] life or freedom would be threatened in that country because of the [noncitizen's] race, religion, nationality, membership in a particular social group, or political opinion."[41]  And the United Nations Convention Against Torture (CAT), ratified by the United States through the Foreign Affairs Reform and Restructuring Act, entitles noncitizens to seek asylum or withholding of removal to a country in which they are likely to be persecuted or tortured.  Normally, a noncitizen raises CAT protections at or directly following his initial removal proceedings.  It appears that no immigration statute or regulation addresses how a noncitizen may raise CAT challenges after ICE determines that deportation to the country on his removal order is impracticable and instead chooses to pursue a third-country removal.

In early 2025, ICE tried to fill that statutory gap.  It issued a policy explaining that, as long as "the United States has received diplomatic assurances from the country of removal that [noncitizens] removed from the United States will not be persecuted or tortured" and those assurances are deemed "credible" by the Department of State, ICE need not give any notice or

---

[39] 8 U.S.C. §§ 1231(b)(2)(E)(i–vi).

[40] 8 U.S.C. § 1231(b)(2)(E)(vii).

[41] 8 U.S.C. § 1231(b)(3)(A).

opportunity to be heard to noncitizens who are being removed to that country.[42]  In all other cases, ICE must serve a notice of removal on the noncitizen that informs him of the intended country of removal.[43]  ICE "will generally wait at least 24 hours following service of the notice of removal before effectuating removal," but the policy allows removal on a mere six hours' notice "as long as the [noncitizen] is provided reasonable means and opportunity to speak with an attorney prior to removal."[44]

After the notice of removal is served, the ICE officer "will <u>not</u> affirmatively ask whether the [noncitizen] is afraid of being removed" to that country, but if the noncitizen independently and "affirmatively state[s]" a fear of removal, ICE's Enforcement and Removal Operations (ERO) division "will refer the case to U.S. Citizenship and Immigration Services (USCIS) for a screening for eligibility for protection" under CAT.[45]  If (through an unidentified process) USCIS determines that the noncitizen has not shown that he "would more likely than not be persecuted on a statutorily protected ground or tortured in the country of removal," the noncitizen will be removed.[46]  If USCIS determines that the noncitizen "has met this standard," ICE will file a motion to reopen immigration proceedings for the "sole purpose of determining eligibility for protection under" 8 U.S.C. § 1231(b)(3) and CAT for the country of removal.[47]

---

[42] ECF No. 10-3.

[43] *Id.*

[44] *Id.*

[45] *Id.*

[46] *Id.*

[47] *Id.*

9

### 2.    *ICE's third-country policy violates due process, so any attempt to remove Diaz-Gonzalez to a third country must be preceded by notice and a meaningful opportunity to be heard.*

Diaz-Gonzalez contends that ICE's third-country-removal policy does not provide adequate notice or an opportunity to be heard, thus violating the Fifth Amendment's due-process clause.[48]  "The Due Process clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent."[49]  The "fundamental features of due process" are notice and an opportunity to be heard.[50]

The Ninth Circuit has not expressly ruled on what process is due to noncitizens faced with third-country removal.  But it has come close.  In *Andriasian v. INS*, the Ninth Circuit panel held that immigration officials could not add a new country to the petitioner's removal order without proper notice.[51]  It explained that "[f]ailing to notify individuals who are subject to deportation that they have the right to apply for asylum in the United States and for withholding of deportation to the country to which they will be deported violates both INS regulations and the constitutional right to due process."[52]  And in the unpublished case of *Najjar v. Lynch*, another Ninth Circuit panel cited *Andriasian* for the proposition that, "[i]n the context of country-of-

---

[48] ECF No. 48 at 14–15.  Diaz-Gonzalez also challenges the policy under the Administrative Procedure Act (APA).  In that claim, he essentially argues that the government violated the APA by using a procedure that violates due process.  *See id.*  Because Diaz-Gonzalez's due-process claim on its own justifies release, I do not separately consider whether the government has violated the APA.

[49] *Zadvydas*, 533 U.S. at 693 (cleaned up).

[50] *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1205 (9th Cir. 2022).

[51] *Andriasian v. INS*, 180 F.3d 1033, 1041 (9th Cir. 1999).

[52] *Id.*

removal designations, last minute orders of removal to a country may violate due process if a[] [noncitizen] was not provided an opportunity to address his fear of persecution in that country."[53]

District courts have extrapolated these holdings to find that adequate due process requires ICE to (1) provide notice, (2) "ask the noncitizen whether he or she fears persecution or harm upon removal to the designated country and memorialize in writing the citizen's response," (3) "inform the noncitizen that he or she may seek asylum, withholding, and relief under the CAT by filing a motion to reopen with the immigration courts" if the answer to that question is yes, and (4) provide "adequate time to prepare and file a motion to reopen[.]"[54]  Said more succinctly, "[a] noncitizen must be given sufficient notice of a country of deportation that, given his capacities and circumstances, he would have a reasonable opportunity to raise and pursue his claim for withholding of deportation."[55]  District courts across the country have also routinely found that ICE's third-country policy doesn't comport with due process.[56]

It is abundantly clear that the first third-country-removal option—immediate deportation without notice so long as the accepting country gives generalized assurances that it will not torture anyone—doesn't provide adequate due process to a noncitizen who may be removed to that country.  Notice, let alone an opportunity to be heard, is not available to a noncitizen in that

---

[53] *Najjar v. Lynch*, 630 F. App'x 724, 724 (9th Cir. 2016) (unpublished) (cleaned up).

[54] *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1019–20 (W.D. Wash. 2019); *see also, e.g.*, *Nguyen v. Scott*, 796 F. Supp. 3d 703, 727 (W.D. Wash. 2025).

[55] *Aden*, 409 F. Supp. 3d at 1009 (citing *Mathews v. Eldridge*, 424 U.S. 319, 348–49 (1976); *Kossov v. INS*, 132 F.3d 405, 408 (7th Cir. 1998)); *see also Kumar v. Wamsley*, 2025 WL 3204724, at *5 (W.D. Wash. Nov. 17, 2025) (finding that this due-process requirement "flows directly from Ninth Circuit precedent" requiring notice of a noncitizen's right to apply for asylum or withholding of removal to a previously undisclosed country).

[56] *See, e.g.*, *Nguyen*, 796 F. Supp. 3d at 728 ("This policy contravenes Ninth Circuit law . . . . It would be impossible to comply both with Ninth Circuit precedent and this policy."); *Vu v. Noem*, 2025 WL 3114341, at *9 (E.D. Cal. Nov. 6, 2025) (collecting cases); *D.V.D. v. DHS*, 2025 WL 1142968 (D. Mass. Feb. 25, 2026).

situation.  And ICE's second scheme doesn't fare much better.  Though the policy requires notice, it may be given in as little as six hours before the noncitizen's removal, and that notice explicitly does not advise the noncitizen that he may seek withholding, deferral, asylum, or other protections if he fears removal to that third country.  Even if the noncitizen knows to affirmatively state a fear of removal, the policy does not afford him a hearing of any kind unless a USCIS officer determines, through an unexplained process, that the noncitizen would be likely to prove that any of those protections applies.  So this process does not comport with the fundamental requirements of due process.

I also find that Diaz-Gonzalez is likely to face a due-process violation from this policy.  The government appeared poised to remove Diaz-Gonzalez to a third country (Mexico) once, and there's no indication that his removal to Cuba or Spain is likely or reasonably foreseeable.  I thus grant Diaz-Gonzalez's petition with respect to his third-country-removal claims and prohibit the federal respondents from rearresting Diaz-Gonzalez with the intention of removing him to a third country unless they comply with the notice-and-hearing requirements established above.

**Conclusion**

IT IS THEREFORE ORDERED that petitioner Dagmar Jesus Diaz-Gonzalez's petition for a writ of habeas corpus under 28 U.S.C. § 2241 **[ECF No. 48] is GRANTED**.  Petitioner **Dagmar Jesus Diaz-Gonzalez must be released from detention within five days, subject to reasonable supervision conditions.**

IT IS FURTHER ORDERED that the respondents must file and serve on defense counsel:

(1) notice of the date, time, and location of Diaz-Gonzalez's release at least 2 days before the release is set to occur, and

12

(2) within 7 days of this order, notice that Diaz-Gonzalez's release was effectuated.

IT IS FURTHER ORDERED that **the federal respondents are enjoined from re-detaining Dagmar Jesus Diaz-Gonzalez absent proof of changed circumstances making his removal reasonably foreseeable.**

IT IS FURTHER ORDERED that the **federal respondents are enjoined from removing Dagmar Jesus Diaz-Gonzalez to any country not listed on his removal order unless it first complies with the notice-and-hearing requirements detailed in this order**.

IT IS FURTHER ORDERED that counsel for respondents is directed to immediately provide notice of this order to the restrained parties they represent.

The Clerk of Court is directed to SEND a copy of this order to the Warden of Nevada Southern Detention Center in Pahrump, Nevada, and CLOSE THIS CASE.

_____
U.S. District Judge Jennifer A. Dorsey
June 25, 2026